IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action: 3:21-cv-00221

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| and ) | **PLAINTIFF-INTERVENOR'S** |
| ) | **COMPLAINT IN** |
| CHRISTIN SMITH ) | **INTERVENTION** |
| ) | |
| Plaintiff-Intervenor ) | |
| v. ) | |
| ) | |
| MODERN POLYMERS, INC., | |
| | |
| Defendant. | |

_____

Plaintiff-Intervenor, complaining of Defendant Modern Polymers, Inc., alleges the following:

## NATURE OF ACTION

Pursuant to the Court's June 18, 2021, Order [Doc. 10] granting Plaintiff-Intervenor's Motion to Intervene pursuant to Fed.R.Civ. P.24(a)(1) and Title VII, 42 U.S.C. § 2000e-5(f)(1), Plaintiff-Intervenor files her Complaint and claims for violations of her civil rights protected by federal law against Defendant, including Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000 *et seq*.[1]

---

[1] Plaintiff-Intervenor has also filed a lawsuit on June 9, 2021 (Smith *v. Modern Polymers, Inc.; John Stanley*- File No: *21CVS 2408*) in Gaston County Superior Court for her state law claims for violations of North Carolina law against Defendant Modern Polymers, Inc. and Defendant John Stanley.

1

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1343, and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3) (Title VII). Plaintiff-Intervenor intervenes pursuant to the Equal Employment Opportunity Commission's (EEOC) May 12, 2021, Complaint [Doc. 1] against Defendant Modern Polymers, Inc. for violations of Title VII pursuant to 42 U.S.C. § 2000e-5(f)(1) and (3) and Section 706 (f)(1) and (3).

2.      All of the acts complained of occurred within, and each party is a resident of, the Western District of North Carolina. Venue is therefore proper in this Court pursuant to 28 U.S.C § 1391.

## PARTIES

3.      Plaintiff-Intervenor, Christin Smith, 27, is a resident of Cleveland County, North Carolina. At all relevant times of this action, Plaintiff-Intervenor was an employee of Defendant as defined by Title VII.

4.      Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring the original action in this case by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

5.      Defendant Modern Polymers, Inc. is a corporation organized, and existing under the law of the state of North Carolina. Modern Polymers is located in Gaston County, North Carolina. Defendant is engaged in providing plastic fabrication, specialty molding, and

2

foam products in the Charlotte metropolitan area and conducts business across the state of North Carolina and the United States. At all times pertinent to this action, Defendant employed more than fifteen (15) employees and was the employer as defined by Title VII.

## FACTS

6. Plaintiff-Intervenor initially began work for Defendant in March 2018 through a temporary staffing employment agency working at their manufacturing plant and facilities in Cherryville, North Carolina.

7. Based on Plaintiff-Intervenor's excellent performance she was hired on full-time by Modern Polymers on or about June 6, 2018.

8. Plaintiff-Intervenor was assigned to work in the Quality Assurance Department and held the position of Quality Technician during the entire tenure of her employment.

9. Plaintiff-Intervenor's job duties included reviewing orders, supplier shipments, and reviewing materials and supplies throughout Modern Polymer's Cherryville facilities.

### Plaintiff -Intervenor's Initial Employment with Defendant and Warnings Regarding Stanley

10. Upon hiring or shortly thereafter, Plaintiff-Intervenor was advised by female employees of Defendant, including members of management, that Mr. John Stanley, a supervisor employed by Defendant, was extremely flirtatious and had aggressively pursued female employees for dating and sexual relationships prior to Plaintiff-Intervenor's hire.

11. Upon information and belief, Robin Heavener, a female manager of Defendant, was aware of Stanley's harassment and pursuit of female employees prior to Plaintiff-Intervenor's full-time employment with Defendant.

12. Upon information and belief, other members of Defendant's management and ownership were aware of complaints against Stanley related to sexual harassment and pursuit of female employees.

13. Plaintiff-Intervenor informed her female colleagues and members of management that she only wanted to perform her job duties at work and was happily engaged to her fiancé.

## **Pervasive Sexual Harassment of Plaintiff-Intervenor by Stanley**

14. In or about June 2018, Stanley began showing romantic interest in Plaintiff-Intervenor, including spending time around her workstation which was unrelated to the performance of Stanley's job duties.

15. Plaintiff-Intervenor and Stanley had to interact with and communicate with one another at times to complete their respective job duties on or about Defendant's plant and facilities, but Stanley was not Plaintiff-Intervenor's direct supervisor.

16. Beginning in or about mid-June 2018, Stanley began leaving gifts and flowers at Plaintiff-Intervenor's desk and workstation prior to her arrival at work. The initial unwanted gestures and gifts began as gifts of food, candy, and flowers on multiple occasions.

17. Plaintiff-Intervenor was humiliated and embarrassed by the gestures and informed Stanley to stop as the gifts were unwanted, embarrassing, and inappropriate.

18. Plaintiff-Intervenor's co-workers and colleagues with workstations nearby did not receive similar gifts or gestures from Stanley.

19. In or about August 2018, Stanley's harassment of Plaintiff-Intervenor began to

escalate. Stanley began first insinuating, and then directly asking Plaintiff-Intervenor to engage in a personal dating relationship with him despite knowing she was engaged to her fiancé.

20. Mr. Stanley repeatedly began telling Plaintiff-Intervenor he would "*treat her better*" than Plaintiff-Intervenor's fiancé did. Stanley told Plaintiff-Intervenor's co-workers and others that he was pursuing a dating and sexual relationship with Plaintiff-Intervenor.

21. Plaintiff-Intervenor informed Stanley that she did not wish to date him and that she was happily engaged. Further, Plaintiff-Intervenor told Stanley that the gifts and any romantic pursuit of her must stop immediately.

22. Plaintiff-Intervenor continued to communicate with Stanley as it related to her job duties and issues related to their work but attempted to avoid any further interactions.

23. In or about the summer of 2018, Plaintiff-Intervenor was approached by Emily Whitworth, an employee who performed human resources functions for Defendant. Ms. Whitworth indicated that Stanley had interest in pursuing a dating relationship with Plaintiff-Intervenor and encouraged Plaintiff-Intervenor to give Stanley "*a chance.*"

24. Plaintiff-Intervenor was shocked by Ms. Whitworths's comments and was emphatic with Ms. Whitworth that she was not interested in a romantic relationship with Stanley. Plaintiff-Intervenor stated she wanted Stanley's harassing and unlawful conduct to cease immediately.

25. Despite Plaintiff-Intervenor's unequivocal statements and complaints regarding Stanley to Human Resources, Defendant failed to take steps to protect Plaintiff-Intervenor

from further harassment and unlawful conduct by Stanley.

## Unlawful Touching and Assault of Plaintiff-Intervenor by Stanley

26. Beginning in August 2018 and until Plaintiff-Intervenor's discharge, Stanley started unwanted physical touching of Plaintiff-Intervenor. The unwanted physical touching began with Stanley running his hands along the lower back of Plaintiff-Intervenor as he passed by her on the plant floor.

27. Beginning in August 2018 Stanley also began slapping Plaintiff-Intervenor's buttocks without Plaintiff-Intervenor's consent. This unlawful conduct continued until her discharge in April 2019.

28. The unlawful touching of Plaintiff-Intervenor's buttocks occurred while Plaintiff-Intervenor passed Stanley on the stairwell or if Plaintiff-Intervenor got up to leave her workstation when Stanley was in the room.

29. Defendant Stanley intentionally tried to create scenarios where Plaintiff-Intervenor and Stanley were alone in an office or not in the line of vision of others in order to touch Plaintiff-Intervenor without her consent.

30. In or around the same time in August of 2018 and through her discharge, Stanley placed gifts on Plaintiff-Intervenor's desk which were sexual in nature. On at least one occasion, Stanley placed panties on Plaintiff-Intervenor's desk in a bag as a "*gift*". Plaintiff-Intervenor refused to accept the inappropriate and harassing gesture and demanded his conduct stop.

31. Members of Defendant's management were or should have been aware of the pervasive sexual harassment and unlawful touching of Plaintiff-Intervenor by Stanley and

6

failed to intervene or stop the conduct.

32. Stanley would remark about Plaintiff-Intervenor's appearance, including that he had seen Plaintiff-Intervenor's underwear when she bent down to pick something up from her workstation. Stanley also showed Plaintiff-Intervenor pictures he had taken of her as she exited a room and remarked about her body.

33. In or about August 2018, following the completion of a shift, Plaintiff-Intervenor discovered candy and a teddy bear made of artificial flowers had been placed in her car which was parked in the employee parking lot. Earlier in the day Stanley had indicated he had "*left something*" for Plaintiff-Intervenor.

34. In the fall of 2018, following the completion of a shift, Stanley called Plaintiff-Intervenor over to his car where he was standing with his trunk open. Stanley showed Plaintiff-Intervenor a black duffel bag in his trunk which contained sex toys.

35. Stanley suggested that Plaintiff-Intervenor take a sex toy and try rubbing it on her breasts. Plaintiff-Intervenor was shocked by Stanley's actions and immediately left to avoid further harassment.

36. Plaintiff-Intervenor had previously heard Stanley discuss his sex life during work hours. Plaintiff-Intervenor was also aware through conversations with other female employees that Stanley had previously discussed the use of sex toys and watching pornography at work.

37. In the weeks prior to Plaintiff-Intervenor's discharge, Plaintiff-Intervenor witnessed Stanley watching pornography on his phone while at work.

38. Stanley discussed his sex life, including his BDSM lifestyle, while at work and in

the presence of other employees of Defendant.

39. Upon information and belief, Defendant, including members of management, were aware of Stanley discussing his sex life and pornography in the workplace.

40. Beginning in or about September 2018 and continuing until her discharge, Plaintiff-Intervenor was unlawfully touched by Stanley on multiple occasions while Plaintiff-Intervenor was seated at her computer. Stanley would request to look at something on Plaintiff-Intervenor's computer screen where she was seated which he claimed was related to work. While Plaintiff-Intervenor and Stanley were at her desk looking at the computer screen, Stanley would touch Plaintiff-Intervenor's inner thighs and legs.

41. On each occasion the unlawful touching and sexual harassment occurred Plaintiff-Intervenor would direct Stanley to stop and leave the work area and find co-workers. Plaintiff-Intervenor made every possible effort to ensure she was in the presence of co-workers with Stanley at work.

42. Defendant knew about the harassment of Plaintiff-Intervenor by Stanley and failed to take steps to protect Plaintiff-Intervenor from further physical assault and sexual harassment.

43. In or about early 2019, Plaintiff-Intervenor and a female co-worker approached Robin Heavener to describe the sexual harassment of Plaintiff-Intervenor by Stanley, and request that the unlawful harassment and conduct cease. This included describing frequent unwanted contact by text message and phone calls by Stanley to Plaintiff-Intervenor.

44. Despite Plaintiff-Intervenor's complaints to human resources and management, Defendant failed to take proper steps to protect Plaintiff-Intervenor from further sexual

8

harassment and a hostile work environment.

45. In the weeks prior to Plaintiff-Intervenor's discharge, Plaintiff-Intervenor was approached by Defendant's Plant Manager and asked why she was seen with Stanley so much during work hours. Plaintiff-Intervenor informed the attention of Stanley towards her was unwelcome, and she wished for the harassment to cease immediately.

## **Plaintiff-Intervenor's Discharge from Employment with Defendant**

46. Despite Plaintiff-Intervenor's complaints and Defendant's knowledge of the pervasive sexual harassment toward Plaintiff-Intervenor, Defendant failed to take any steps to stop the unlawful conduct or protect Plaintiff-Intervenor.

47. The pervasive sexual harassment of Plaintiff-Intervenor caused significant emotional distress and adversely impacted Plaintiff-Intervenor's mental health and personal relationships. The severe and pervasive sexual harassment, including unlawful physical touching, caused Plaintiff-Intervenor significant emotional distress, humiliation, and mental anguish.

48. Plaintiff-Intervenor was subjected to a hostile work environment based on her sex which was reasonable and foreseeable.

49. Accordingly, Plaintiff-Intervenor was constructively discharged and forced to resign due to the hostile work environment created by the severe and pervasive sexual harassment.

50. Upon information and belief, subsequent to Plaintiff-Intervenor's constructive discharge, Stanley remained employed with Defendant.

51. Upon information and belief, subsequent to Plaintiff-Intervenor's constructive

discharge, additional complaints were made by, or on behalf of, female employees regarding Stanley's unlawful conduct.

52. As a result of the actions of Defendant, Plaintiff-Intervenor has continued to suffer from severe and chronic emotional distress, including the diagnosis of disorders associated with severe depression and anxiety.

**Plaintiff-Intervenor's Filing of her EEOC Charge of Discrimination and Exhaustion of Administrative Remedies**

53. As a result of Defendant's actions, on or about April 11, 2019, Plaintiff-Intervenor filed a Charge of Discrimination (Charge # 430-2019-01610C) with the EEOC at their Charlotte office alleging sexual harassment, sex discrimination, and a hostile work environment based on her sex.

54. On July 30, 2020, the EEOC issued a Determination finding reasonable cause that Plaintiff-Intervenor had been subjected to a hostile work environment based on Plaintiff-Intervenor's sex, and Defendant knew or should have known of the sexually harassing behavior but failed to take prompt and effective action to stop the sexual harassment.

55. Further, the EEOC's Determination found evidence that since 2018 Defendant had subjected a class of female employees to a sexually hostile work environment at Defendant's Cherryville, NC facility.

56. The EEOC Determination found that the same male co-worker that had harassed Plaintiff-Intervenor (as described above) had engaged in similar unwelcome conduct toward other female employees based on their sex, and Defendant knew or should have known of the sexually harassing behavior but failed to take prompt and effective action to

10

stop it.

57. Following failed Conciliations, the EEOC transferred Plaintiff-Intervenor's EEOC Charge to the EEOC's legal unit for further investigation and potential enforcement.

58. On May 11, 2021, the EEOC filed their Complaint [ Doc. 1] with this Court for Defendant's violations of Title VII and Title I of the Civil Rights Act of 1991.

59. On June 17, 2021, Plaintiff-Intervenor filed her Motion to Intervene and Memorandum in Support [Doc.7-8] with this Court pursuant to Fed.R.Civ. P.24(a)(1) and Title VII, 42 U.S.C. § 2000e-5(f)(1).

60. On June 21, 2021, Plaintiff-Intervenor received notice that her Motion to Intervene was granted by the Court on June 18, 2021. [Doc. 10].

61. Plaintiff-Intervenor has complied with all procedural prerequisites and conditions precedent prior to filing these claims.

## FIRST CLAIM FOR RELIEF
### Sex (female) Discrimination in Violation of Title VII

1. Plaintiff-Intervenor hereby incorporates the foregoing paragraphs as if fully set out herein.

2. As stated above, Plaintiff-Intervenor was a member of the protected class under Title VII as a female and was protected from by Title VII from sex discrimination and harassment in the workplace.

3. Throughout her employment with Defendant, Plaintiff-Intervenor was subjected to unwelcome sex discrimination and harassment that was persistent and pervasive.

4. Specifically, Defendant wrongfully and intentionally discriminated against Plaintiff-Intervenor in violation of 42 U.S.C. § 2000e-2, as follows:

   a. Subjecting Plaintiff-Intervenor to a sexually hostile workplace, and failing to take reasonable and prompt corrective action to address and end discrimination;

   b. Subjecting Plaintiff-Intervenor to discriminatory and harassing statements, comments, and unlawful conduct as a result of sex (female);

   c. Subjecting Plaintiff-Intervenor to disparate treatment in comparison to her male colleagues;

   d. Ratifying the unlawful conduct, including the persistent and pervasive sex discrimination, sexual harassment, and unlawful touching by Stanley;

   e. Failing to adequately investigate and remedy Plaintiff-Intervenor's complaints of sexual harassment and unlawful conduct in the workplace;

   f. Constructively discharging Plaintiff-Intervenor as a result of sexual harassment and a sexually hostile work environment.

5. As a proximate result of Defendant's acts of sex discrimination against Plaintiff-Intervenor, Plaintiff-Intervenor has suffered substantial damages, including lost income and benefits and other economic losses, mental anguish, and emotional distress; loss of reputation and quality of life, and other damages to be proven at trial.

6. Plaintiff-Intervenor is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 U.S.C. § 2000e-5(k).

7. The acts of Defendant, as described above, were malicious, and evinced an intentional or reckless indifference to and disregard for the federally protected civil rights of Plaintiff-Intervenor. Accordingly, Plaintiff-Intervenor is entitled to punitive damages in an amount to be determined by a jury pursuant to 42 U.S.C. § 1981a(b).

## SECOND CLAIM FOR RELIEF
### Hostile Work Environment in Violation of Title VII-Sex (female)

8. Plaintiff-Intervenor hereby incorporates the foregoing paragraphs as if fully set out herein.

9. As stated above, Plaintiff-Intervenor was a member of the protected class under Title VII as a female and was protected from by Title VII from sex discrimination and a hostile work environment in the workplace.

10. Throughout her employment with Defendant, Plaintiff-Intervenor was subjected to unwelcome sex discrimination and harassment that was persistent and pervasive.

11. Specifically, Defendant wrongfully and intentionally discriminated against Plaintiff-Intervenor in violation of 42 U.S.C. § 2000e-2, as follows:

   a. Subjecting Plaintiff-Intervenor to a sexually hostile workplace, and failing to take reasonable and prompt corrective action to address and end discrimination;

   b. Subjecting Plaintiff-Intervenor to discriminatory and harassing statements, comments, and conduct as a result of her sex (female);

   c. Subjecting Plaintiff-Intervenor to disparate treatment in comparison to her male colleagues;

  d. Ratifying the unlawful conduct, including the persistent and pervasive sex discrimination and harassment by Stanley;

  e. Constructively discharging Plaintiff-Intervenor as a result of sexual harassment and a sexually hostile work environment.

12. As a proximate result of Defendant's acts of sex discrimination and hostile work environment against Plaintiff-Intervenor, Plaintiff-Intervenor has suffered substantial damages, including lost income and benefits and other economic losses, mental anguish, and emotional distress; loss of reputation and quality of life, and other damages to be proven at trial.

13. The acts of Defendant, as described above, were malicious, and evinced an intentional or reckless indifference to and disregard for the federally protected civil rights of Plaintiff-Intervenor. Accordingly, plaintiff is entitled to punitive damages in an amount to be determined by a jury pursuant to 42 U.S.C. § 1981a(b).

## **REQUEST FOR RELIEF**

WHEREFORE, plaintiff -intervenor requests the following relief:

A. That she recovers compensatory damages against Defendant in an amount in excess of $100,000;

B. That she recovers punitive damages against Defendant in an amount in the judgment of the jury;

C. That she be awarded pre-trial and post-judgment interest on all amounts awarded herein;

D. That she be awarded the costs of this action; and

E.      That she be granted further relief as the court deems just and proper.

## **PLAINTIFF INVERVENOR'S DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff-Intervenor hereby demands a trial by jury on all issues presented herein.

This the 23rd day of June 2021.

/s/ *Daniel C. Lyon*
Daniel C. Lyon
N. C. State Bar No. 43828
Elliot Morgan Parsonage, PLLC
300 E. Kingston Ave.
Suite 200
Charlotte, NC 28203
Phone: 704-707-3705
dlyon@emplawfirm.com

# CERTIFICATE OF SERVICE

The undersigned attorneys hereby certify that they have on this date served a copy of the foregoing **Plaintiff-Intervenor's Complaint in Intervention** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following parties to this action:

**Haynsworth Sinkler Boyd, P.A.**

Christopher B. Major, Fed. ID #31663
ONE North Main, 2nd Floor (29601)
P.O. Box 2048
Greenville, S.C. 29602
Telephone: 864.240.3200
Facsimile: 864.240.3300
cmajor@hsblawfirm.com

Christine Gantt--Sorenson
Haynsworth Sinkler Boyd, P.A.
One North Main, 2nd Floor
Greenville, SC 29601
Telephone: 864.240.3200
Pro Hac Vice pursuant to L.R 83.1 (ECF registration pending)*

Pierce T. MacLennan
Haynsworth Sinkler Boyd, P.A.
135 S. Dargan Street, Suite 300
Florence, SC 29501
Telephone: 843.720.4429
Pro Hac Vice pursuant to L.R 83.1 (ECF registration pending)*
*Attorneys for Defendant Modern Polymers, Inc.*

**Equal Employment Opportunity Commission (EEOC)**

Zoe G. Mahood (21722)
Senior Trial Attorney
Equal Employment Opportunity Commission

Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, NC 27601
Phone: (984) 275-4809
Fax: (919) 856-4151
Email: Zoe.Mahood@eeoc.gov

Attorney for Plaintiff EEOC

                                          ***/s/Daniel C. Lyon***
                                          Daniel C. Lyon
                                          N.C. State Bar No. 43828
                                          Elliot Morgan Parsonage, PLLC
                                          300 E. Kingston Ave, Suite 200
                                          Charlotte, NC 28203
                                          Telephone: 704.707.3705
                                          E-Mail: dlyon@emplawfirm.com

17

Case 3:21-cv-00221-RJC-DCK   Document 15   Filed 06/23/21   Page 17 of 17